A08A2283. WIMPEY v. THE STATE.
(676 SE2d 831)

BLACKBURN, Presiding Judge.

On January 6, 2004, Lauren Wimpey pled guilty to a single count of theft by taking (OCGA § 16-8-2) for stealing money from her employer, Sunset Land, Inc. d/b/a Central Feed and Seed, between January 1, 2000 and April 15, 2002. On the same date, the trial court sentenced Wimpey to 15 years probation under the First Offender Act (OCGA § 42-8-60) and ordered her to pay $120,163.40 in restitution to Central Feed and Seed and to make monthly payments of $700 toward this amount. Thereafter, on February 11, 2004, the trial court issued a written restitution order providing for the same restitution amount and payment schedule. Wimpey appeals from the restitution order, arguing that the trial court erred in failing to consider the factors set forth in OCGA § 17-14-10 and failing to issue written findings as to each of these factors. Finding that Wimpey failed to respond to the court's inquiry as to her financial status, we

---

affirm the trial court's ruling in this matter. See OCGA § 17-14-10 (a) (3).

OCGA § 17-14-7 provides in part:

The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the state. The burden of demonstrating the financial resources of the offender or person being ordered to pay restitution and the financial needs of his or her dependents shall be on the offender or person being ordered to pay restitution. The burden of demonstrating such other matters as the ordering authority deems appropriate shall be upon the party designated by the ordering authority as justice requires.

After the State has borne its burden of showing the amount of the victim's loss, OCGA § 17-14-7 (b) places the burden of showing the defendant's resources and expenses on the defendant: "The burden of demonstrating the financial resources of the offender or person being ordered to pay restitution and the financial needs of his or her dependents shall be on the offender or person being ordered to pay restitution." See *Cheeks v. State*.[1]

Here, defendant Wimpey chose not to meet this burden. Wimpey pled guilty to the charge of theft by taking and presented herself for sentencing. The court accepted the parties' recommendation of 15 years probation and the parties' recommendation that the court determine a fine and restitution. After the court determined the amount of damages to the victim and sua sponte inquired into Wimpey's income and number of dependents, the following colloquy occurred:

THE COURT: Yes. Well, the Defendant has a right to offer her own restitution plan. Does she have any suggestion to the Court about how she would do this?

MR. MORRIS [DEFENSE COUNSEL]: We had spoken about it. I'd let Ms. Wimpey address the Court as to what her expenses are and how she could go about paying the restitution.

THE COURT: *Go ahead.*

MR. MORRIS: Did you have any — the way we had talked, how would you go about paying the amount of restitution? Do you have any guidelines or any suggestions

---

[1] *Cheeks v. State*, 218 Ga. App. 212, 214 (460 SE2d 860) (1995).

as to how he could order you to repay this amount of restitution?

THE DEFENDANT: I would just have to make payments over the course of the time.

(Emphasis supplied.)

That was the totality of Wimpey's presentation regarding her expenses, even though the Court had expressly directed her and her counsel to "go ahead" with regard to presenting evidence on the matter. Recognizing the inadequacy of this presentation, Wimpey's counsel admitted, apparently to himself: "I almost could have prepared an expense affidavit. That would have helped out. Maybe we should do that." In other words, Wimpey's counsel realized that they were making a poor presentation and seemed to be muttering to himself that maybe they should do a better job. He did not, however, request an extension of time to do so, nor did he in any way ask for a continuance so that he could gather or present more evidence.

Based on this meager evidence, the court announced that it was intending to order that half of her monthly income, which half would be about $700, go to restitution, unless Wimpey wanted to present additional evidence on the matter. Indeed the court expressly asked Wimpey's counsel, "[D]o you have anything you want to say on that?" Counsel responded: "Judge, the only thing I can do is defer back to Ms. Wimpey and ask her if that's still going to allow them to make their house payment and that kind of thing." Wimpey did not say anything, nor did her counsel indicate that Wimpey was somehow being prevented from doing so. The court *again* asked if there was anything else, and Wimpey's counsel only requested that in light of the proposed restitution amount, the court not impose a fine, with which request the court complied. The court *a third time* asked if there was "anything else before I actually impose sentence," and Wimpey's counsel did not indicate that there was. We find no basis for concluding that the trial court ignored her counsel's efforts to argue that Wimpey had not had a meaningful opportunity to present evidence regarding her financial obligations.

The court could not have been more patient and solicitous in allowing Wimpey the opportunity to present evidence on her expenses. She simply chose not to do so. The transcript does not support the dissent's assertion that the trial court ignored Wimpey's counsel's attempts to raise the issue. We therefore affirm the trial court's judgment of restitution.

*Judgment affirmed. Smith, P. J., Ellington, Mikell, Adams and Doyle, JJ., concur. Miller, C. J., dissents.*

MILLER, Chief Judge, dissenting.

I respectfully dissent. In fashioning a restitution order, the trial court has an affirmative obligation to consider the defendant's financial obligations, among other factors. OCGA § 17-14-10 (a); see also *Slater v. State*, 209 Ga. App. 723, 725 (4) (434 SE2d 547) (1993) ("It is not sufficient for the trial judge to consider only the amount of the victim's damages. Pursuant to OCGA § 17-14-10, the court *must* also consider other factors. . . .") (citation and punctuation omitted; emphasis supplied). This statutory duty serves an important purpose, in my view. If the trial court fails to take the defendant's financial obligations into account, it runs the risk of ordering restitution payments that the defendant cannot realistically afford, and a victim of criminal conduct is less likely to be made whole or to receive compensation under those circumstances. Instead, the salutary goal of providing restitution to crime victims is better served when a restitution order bears a reasonable relationship to the defendant's ability to pay. Because the record here discloses that the trial court failed to discharge its statutory obligation to consider Wimpey's financial obligations and Wimpey did not waive her right to present evidence regarding the same, either personally or through her attorney, I would remand the case to the trial court for a new restitution hearing.[2]

The majority lays responsibility for the trial court's omission to consider Wimpey's expenses on the shoulders of Wimpey and her counsel, concluding that Wimpey "chose" not to meet her burden of offering evidence of her financial obligations. See OCGA § 17-14-7 (b) (offender bears burden of demonstrating his or her financial resources and the financial needs of his or her dependents). While I agree that Wimpey's counsel might have done a better job protecting his client's interests, the record does not support a finding that Wimpey waived her right to present evidence regarding her financial obligations but rather shows that the trial court curtailed her ability to do so.

OCGA § 17-14-7 (b) mandates that if the parties have not agreed on the amount of restitution prior to sentencing, the "ordering authority shall set a date for a hearing to determine restitution." See also *McCart v. State*, 289 Ga. App. 830, 832 (1) (658 SE2d 465) (2008). In this case, the trial court did not set a date for a restitution hearing but rather proceeded to address the issue of restitution

---

[2] I am aware that the trial court's omission might be due to the fact that at the time Wimpey's hearing was held, OCGA § 17-14-10 did not list the defendant's financial obligations as one of the factors to be considered in determining the amount of restitution. Given our holding in *McCart v. State*, 289 Ga. App. 830, 833 (1), n. 5 (658 SE2d 465) (2008), we are duty bound to apply the statute as amended.

immediately after accepting Wimpey's guilty plea and entertaining the parties' joint sentencing recommendation. Wimpey did not give sworn testimony, but the trial court ascertained certain information through an informal colloquy with her. Wimpey advised the trial court that she earned approximately $340 a week and her husband earned approximately $600 a week. She further stated that she had two children, had no assets that could be sold to pay toward restitution, and had not inherited any property or money from friends or relatives. The trial judge, who did not elicit any information from Wimpey about her financial obligations, acknowledged that the information he gleaned through the colloquy with Wimpey was not "evidence."

After finding, based upon several exhibits submitted by the State, that the amount of damages incurred by Central Feed and Seed was $120,163.40, the trial court addressed Wimpey and asked her if she would like to offer a restitution plan. The following colloquy ensued:

> MR. MORRIS: We had spoken about it. I'd let Ms. Wimpey address the Court as to what her expenses are and how she could go about paying the restitution.
> THE COURT: Go ahead.
> MR. MORRIS: Did you have any — the way we had talked, how would you go about paying the amount of restitution? Do you have any guidelines or any suggestions as to how he could order you to repay this amount of restitution?
> THE DEFENDANT: I would just have to make payments over the course of the time.

At that point, the trial court remarked that in order to pay the victim's damages over a period of 15 years, Wimpey would need to pay $667.57 a month. Wimpey's counsel then proposed that he submit an affidavit addressing Wimpey's expenses, stating, "I almost could have prepared an expense affidavit. That would have helped out. Maybe we should do that." The trial court ignored this remark and continued to discuss the proper calculation of Wimpey's bi-weekly take-home pay.

Ultimately, the trial court ordered Wimpey to pay $700 a month, reasoning that would leave her with about half of her net income, that she would still have the benefit of her husband's income, and that it would expect Wimpey's income to increase over time. When the trial court asked counsel for the parties if they had further comments on his proposed restitution order, Wimpey's counsel responded: "Judge, the only thing I can do is defer back to Ms.

Wimpey and ask her if that's still going to allow them to make their house payment and that kind of thing." The trial court ignored defense counsel's attempt to raise this issue, failed to give Wimpey an opportunity to respond, and simply reiterated that it would expect Wimpey's income to increase over time. Under these circumstances, the trial court cannot be said to have given Wimpey a meaningful opportunity to present evidence on her financial obligations, and, as a result, we are left with questions regarding Wimpey's circumstances, such as the amount of her rent or mortgage payment, her family's regular expenses, and the amount of money required to care for her two children.

This case is distinguishable from cases such as *Cheeks v. State*, 218 Ga. App. 212 (460 SE2d 860) (1995), in which we have held that a defendant waived the right to present evidence relating to factors set forth in OCGA § 17-14-10. In *Cheeks*, we held that because the defendant had requested a restitution hearing in which she had an opportunity to present evidence of her ability to pay, "yet still chose not to present any evidence, her silence [would be] deemed a waiver." Id. at 214; see also id. at 216 (Beasley, C. J., dissenting) (agreeing that waiver occurred because "if [the defendant] asked for such a hearing, she knew the factors which would be taken into account, and she was obliged to present whatever she thought relevant"). Here, by contrast, there is no evidence that Wimpey requested that the trial court conduct a restitution hearing immediately after accepting her guilty plea, nor did Wimpey have a meaningful opportunity to present evidence regarding her financial obligations. Although Wimpey's counsel attempted to raise this issue several times, the trial court, as discussed above, rebuffed those efforts.

For the reasons set forth above, I dissent and would remand for an actual restitution hearing to stop the guesswork.

DECIDED MARCH 30, 2009.

*Ricky W. Morris, Jr., Suesan A. Miller*, for appellant.
*Tommy K. Floyd, District Attorney, Thomas R. McBerry, John A. Pipkin III, Assistant District Attorneys*, for appellee.